IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| FRANCISCO VILLANUEVA #1868609 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv098 |
| LT. UNKNOWN LANDRUM, et al. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRTE JUDGE</u>

Plaintiff Francisco Villanueva, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding pro se and in forma pauperis, filed this lawsuit for alleged violations of his constitutional rights in prison pursuant to 42 U.S.C. § 1983. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Now before the Court is the Defendants' motion for summary judgment limited to the issue of exhaustion of administrative remedies. (Dkt. #53.) Plaintiff submitted a letter to the Court shortly after the Defendants filed their motion, and the Court construes it to be his response to the motion. (Dkt. #54.) For the reasons explained below, the undersigned recommends that the Defendants' motion be denied without prejudice.

**I. Plaintiff's Allegations and Evidence**

Plaintiff alleges that he reported to "rank" on November 4 or 9, 2020, that he feared for his life because of a threat posed by his cellmate, Adrian Alaniz. (Dkt. #20 at 4–5.) Specifically, he says he reported his fear to Ms. Martinez, who took him to the "rank" office, where he explained the problem to Lieutenant Landrum in the presence of Captain Dodd and Sergeant Nation. (*Id.*) Defendant Landrum told Plaintiff that he would have either Plaintiff or his cellmate moved the

1

next day. (*Id.* at 4.) But nobody was moved in the days that followed, and Plaintiff's cellmate tried to kill him on November 17, 2020, causing him to suffer a fractured shoulder and an injury to his eye leading to double vision. (*Id.* at 4–5.) After the November 17 assault, Defendant Landrum "put the charge of deadly weapon and aggravated assau[l]t" on Plaintiff's cellmate, but Landrum denied that Plaintiff had previously reported the threat to his safety. (*Id.* at 4.) Plaintiff sues Landrum, Nation, and Dodd and seeks to have his eye and shoulder fixed. (*Id.* at 3, 5.)

In both his original and amended complaints, Plaintiff asserts that he exhausted the institutional grievance procedure. (Dkt. #1 at 3; Dkt. #20 at 3.) In a cover letter accompanying his original complaint, Plaintiff explained that he submitted a grievance about his claims on December 17, 2020, but it was never returned. (Dkt. #1 at 6.) He said that one of "the ladies work[ing]in the office" came and talked to him about his grievance, but that she later told him via an I-60 form that she did not have his grievance. (*Id.*) He attaches an I-60 form he signed on February 18, 2021, in which he said he had "wait[ed] for a long time" for his December 17 grievance to be returned and asked that it be returned quickly. (*Id.* at 8.) The undated response to his request reads: "The last grievance we received 10-12-20 and closed 10-22-20." (*Id.*)

Plaintiff's original complaint was received by the Court on March 8, 2021. (Dkt. #1 at 9.)

## II. Defendants' Motion and Supporting Evidence

Defendants assert that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit as required by the PLRA. (Dkt. #53 at 4.) First, they argue that Plaintiff's grievances did not state his claims sufficiently to give TDCJ officials notice of the basis for his federal complaint. (*Id.* at 7.) Second, they argue that even if Plaintiff's grievances gave sufficient notice of his claims, he filed suit on March 8, 2021, weeks before his Step 1 grievance was returned to him on April 9, 2021, and months before his Step 2 grievance was returned on June 11, 2021. (*Id.*)

In support of their motion, Defendants submit Plaintiff's relevant grievance records, certified by the TDCJ's Inmate Grievance Department custodian of records.[1] (Dkt. #53-1.) The records confirm that Plaintiff signed a Step 1 grievance on December 17, 2021, as he alleged. (*Id.* at 12–13.) In it, he said he was attacked and hurt by his cellmate on November 17, 2020. (*Id.* at 12.) He asserted that Landrum, Nation, and "todd" were responsible for the attack because he and Ms. Martinez, his case worker, had talked to them and explained the situation "before." He said he had been told that either he or his cellmate would be moved, but "no one was moved resulting in my being attacked." He also said that he was submitting the grievance on December 17 because he had spent fourteen days in a medical unit after the attack, where nobody would give him a grievance form.[2] (*Id.*)

For reasons not explained in Defendants' submission or addressed in their motion, that Step 1 grievance, which was assigned number 2021077212, is stamped received by grievance officials on March 1, 2021—two and a half months after it was signed—and given a response due date of April 10, 2021. (Dkt. #53-1 at 12.) It is also stamped twice with "ACCEPT AS ORIGINAL," and has a handwritten note at the top that says "accepted as original." (*Id.*) A stamp on the Step 1 form indicates that it was returned to Plaintiff on April 9, 2021, with the following response:

> Your allegations of physical harm from another offender have been investigated. An Offender Protection Investigation was initiated and found substantiated on 11/17/20. There is no evidence of you telling security before then that you needed

---

[1] Curiously, the custodian and defense counsel represent that the records submitted are "for the time period of 2/1/2020 to 2/1/2021," despite the fact that the events relevant to this lawsuit did not begin until November 2020. Moreover, the records actually include documents dated up to June 11, 2021 (Dkt. #53-1 at 20), because it took TDCJ until then to complete its process for the grievance initially begun on December 17, 2020. Nevertheless, the Court accepts that the records themselves are the true and accurate records of Plaintiff's grievances.

[2] Neither TDCJ nor Defendants have taken the position that Plaintiff's Step 1 grievance was untimely, presumably because of the severity of his injuries and length of medical rehabilitation.

3

>to be moved. You were seen by medical on 11/10/20 for an altercation with the same cellmate. TDCJ followed all practices appropriately. No action warranted.

(Dkt. #53-1 at 13.)

Plaintiff appealed that response on April 12, 2021. (Dkt. #53-1 at 10–11.) His Step 2 appeal was stamped received in the unit grievance office on April 15, 2021, and in the headquarters on April 21, 2021. (*Id.* at 10.) It was given a response due date of May 25, 2021. (*Id.*) In the appeal, Plaintiff explained that the November 10, 2020 incident referenced in the Step 1 response actually involved a different inmate. As relevant to this case, he reiterates that Ms. Martinez took him to speak with "rank" on November 8, 2020, and expresses indignation that "you sea [sic] I never report this problem." (*Id.*) The Step 2 was returned to him with the following answer, dated June 11, 2021:

>An investigation has been conducted into your complaint. A Safe Prisons/PREA Investigation has been completed and no evidence has been found to substantiate your allegations of staff misconduct by security staff; however, evidence was found to substantiate your claims of inmate assault. Any further evidence you may have to support your allegations should be brought to the attention of the Major or Warden. No further action is warranted by this office.

(*Id.* at 11.)

Among the investigative records in the grievance file is a mental health services case management review note dated November 10, 2020, and signed by Helen R. Martinez. (Dkt. #53-1 at 17–18.) Ms. Martinez reported that Plaintiff told her his life was in danger from his "crazy" cellmate who had tried to hit him, and that an officer had said he would move one of them, but Plaintiff was still waiting for the move to happen. (*Id.* at 17.) At the end of their meeting Ms. Martinez noted "Patient escorted to security (reports his life is in danger)." (*Id.* at 18.)

Also in the file is an email from Mona Goebel in the central grievance office to Warden John McDaniel dated June 7, 2021, with the subject line "Corrective action needed." (Dkt. #53-1 at 19.) In reference to Plaintiff and grievance #2021077212, Ms. Goebel wrote:

> Inmate Villanueva claims on 11/8/20 he told Lt. Landrum, Sgt. Nations, and captain Dodd that his life was in danger from his cellmate, [redacted]. Inmate Villanueva was seen by Mental Health on 11/10/2020 and told the provider his cellmate had hit him and he feared for his life. In the DDP Case Management Review, it is noted that the inmate was escorted to security to report the LID, however, it appears nothing was done at this time. On 11/17/20, Inmate Villanueva was assaulted by his cellmate, [redacted] and was taken to a local hospital. All officers listed above state they were never told the inmate's life was in danger. Due to Mental Health documentation of the inmate's reported LID and Mental Health having the inmate escorted to security, corrective action needs to be taken to ensure all life endangerment reports are handled in a timely manner. Please advise this office of your investigation into this matter. Thank you.

(*Id.* (typographical errors corrected).) Warden John McDanial responded little over three hours later:

> After interviewing ALL security supervisors involved, the inmate told supervisors that he told his therapist his life was in danger just to get him escorted to the supervisors office. Upon the supervisors interviewing him, he stated his life was NOT in danger, he just wanted to move to another cell due to his cell mate being "crazy." Based upon this, there is no corrective action needed.

(*Id.*)

Defendants ask that Plaintiff's case be dismissed with prejudice. (Dkt. #53 at 8.)

### III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party.

6

*Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

Congress enacted the Prison Litigation Reform Act (PLRA) in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory

and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91. The Fifth Circuit has reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). The Court explained that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

Defendants argue that Plaintiff's grievances were too vague to satisfy the purpose of exhaustion by giving fair notice of his claims. Specifically, they assert that Plaintiff's Step 1 grievance only says he talked to Defendants about a problem before he was attacked: "At no point, does Plaintiff allege he told Defendants his life was in danger and that they failed to act, just that they knew of a problem." (Dkt. #53 at 7.) But the exhaustion requirement does not require prisoners to submit the equivalent of a federal complaint as part of the grievance process. As long as a grievance complies with the applicable procedural rules, all the PLRA requires is that it

provides sufficient information to "allow[] a prison to address complaints about the program it administers before being subjected to suit." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Plaintiff's Step 1 grievance conveyed that he had talked to Defendants about a problem with his cellmate, which they apparently thought warranted moving one of the inmates, and that the failure to move one of them resulted in Plaintiff's being attacked and injured. That was sufficient to alert authorities to Plaintiff's potential failure-to-protect claim. In fact, Ms. Goebel's June 7, 2021 email to Warden McDanial makes perfectly clear that officials recognized the seriousness of Plaintiff's allegations and the circumstances of his injury. Defendants' argument about the sufficiency of Plaintiff's Step 1 grievance is without merit.

Defendants also argue that Plaintiff's Step 2 grievance was substantively insufficient to exhaust his remedies for the purpose of the PLRA. First, they assert that Plaintiff "makes no mention of Defendants by name" in his Step 2. The Supreme Court's express holding that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances" renders that argument legally frivolous. *Jones*, 549 U.S. at 219.

The rest of Defendants' argument about Plaintiff's Step 2 grievance is a mischaracterization of its content. They say he "only claims it was a different offender that hit him." (Dkt. #53 at 7.) That ignores Plaintiff's assertion in the grievance about talking with "rank" about "this problem" on November 8, 2020, and about another conversation when "Ms. Martinez take for me [before]." (Dkt. #53-1 at 10.) And immediately after that nutshell summary of his claim, Plaintiff wrote: "an you sea I never report this problem. Remember I'm Cristian an I never lie." (*Id.*) All of Plaintiff's submissions in this case make clear that he struggles with proficiency in written English. But the clear import of Plaintiff's statement is that he is offended that the response to his Step 1 <u>said</u> he never reported a problem when he had repeatedly claimed he reported

9

it, and he does not lie. Whether Plaintiff's accounts are, in fact, truthful is not a question to be decided at this stage of litigation. But construing all inferences from the record in his favor, his grievances clearly conveyed his claim that Defendants were aware of a risk posed by his cellmate and failed to protect him from that risk. And, again, Ms. Goebel's June 7 email leaves no doubt that authorities understood Plaintiff's claim. Accordingly, Defendants' arguments about the substance of Plaintiff's grievances do not entitle them to summary judgment.

Defendants also rely in their motion on the timing of Plaintiff's grievances. They argue that Plaintiff failed to satisfy the PLRA when he filed suit on March 8, 2021, before his Step 1 grievance was returned to him on April 9, 2021, or his Step 2 grievance was returned to him on June 11, 2021. (Dkt. #53 at 7.) Under typical circumstances, that would be correct. *See Patterson v. Doe*, No. 3:19-CV-616-HTW-LRA, 2020 WL 8766066, at *4 (S.D. Miss. Dec. 8, 2020), *report and recommendation adopted*, No. 3:19-CV-616-HTW-LGI, 2021 WL 833951 (S.D. Miss. Mar. 4, 2021) (dismissing for failure to exhaust where inmate submitted Step 2 grievance in July 2019, signed complaint in August 2019, and received grievance response in September 2019). But Defendants ignore the fact that Plaintiff had filed his Step 1 grievance on December 17, 2020, waited months for it to be returned, and followed up within TDCJ's inquiry system to seek its return before filing suit. (Dkt. #53-1 at 13.)

TDCJ guidance concerning the grievance process informs inmates that "[t]he Step 1 process may take up to 40 days from the date the unit grievance office receives the Step 1 form to respond or 45 days for medical grievances." TDCJ Offender Orientation Handbook at 74, available at [Texas Department of Criminal Justice, Offender Orientation Handbook](#) (last visited Aug. 28, 2022). It further advises that if additional time is required to respond to a grievance, the inmate will be "notified of the extension in writing." *Id.* Defendants do not attempt to explain or even

acknowledge the long delay in returning Plaintiff's Step 1 grievance. There is nothing in the records submitted by Defendants indicating that the time to respond to Plaintiff's Step 1 grievance was administratively extended or that he was informed of any such extension. To the contrary, when Plaintiff inquired about his grievance in an I-60 request approximately two months after submitting it, he was effectively told that his grievance did not exist. (Dkt. #1 at 8.) It appears, as Plaintiff asserts in his response, that TDCJ simply lost his grievance for some length of time. (Dkt. #54.) Accordingly, at the time he filed his complaint in this case, Plaintiff had no way of knowing that his grievance was being processed or would eventually be returned. This distinguishes this case from those in which the Court has dismissed for failure to exhaust where the plaintiff filed suit while he "was aware that the process for [his] grievance was still on-going." *Covarrubias v. Foxworth*, No. 6:13CV812, 2017 WL 1159767, at *3 (E.D. Tex. Mar. 29, 2017).

The Fifth Circuit has held that "[a] prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired." *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). More recent opinions make clear that when time has expired "at some preliminary step" in the grievance process, a prisoner is required to make some further effort to exhaust administrative remedies before coming to court. *Carter v. Boyd*, No. 9:19-CV-163, 2022 WL 3146319, at *4 (E.D. Tex. June 15, 2022), *report and recommendation adopted*, No. 9:19-CV-163, 2022 WL 3141871 (E.D. Tex. Aug. 5, 2022). But exactly what form those efforts must take is less clear. *See id.* (discussing the possibility of filing a Step 2 grievance, filing another Step 1 grievance, or "request[ing] a copy of the completed and answered step 1 grievance from the grievance department"). The Fifth Circuit has suggested that a prisoner's obligations in these circumstances may turn on the requirements of the grievance system:

> In *Wilson v. Epps*, 776 F.3d 296 (5th Cir.2015), the plaintiff contended that the prison's failure to respond to his initial grievance excused him from further steps in the process. *Id.* at 301. We explained that "[t]his argument deserves close[ ] scrutiny, because, under some circumstances, a prison's failure to respond to a prisoner's grievance can result in the prisoner's administrative remedies being deemed exhausted." *Id.* The relevant circumstances, we explained, are the requirements of the prison's grievance procedures. The grievance procedures at issue in *Wilson* stated that if a prisoner does not receive a response to his grievance, the prisoner is "entitled"—and therefore, to exhaust, must—"move on to the next step in the process." *Id.* (quoting grievance procedures). By contrast, in *Underwood v. Wilson*, 151 F.3d 292 (5th Cir.1998), *overruled on other grounds as explained in Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012), we held that when a prison's procedures prescribe deadlines by which the authorities must respond to grievances and do not set out any additional steps that prisoners must take upon that time elapsing, then prisoners in such circumstances have exhausted the available procedures. *Id.* at 295. Whether this case is in line with *Wilson* on the one hand, *Underwood* on the other, or presents other circumstances yet, we cannot say without the applicable grievance procedures before us.

*Cantwell v. Sterling*, 788 F.3d 507, 509 n.2 (5th Cir. 2015).

Defendants have not identified what Plaintiff's obligations were under TDCJ regulations to exhaust his grievance upon being told that it did not exist after time to respond—or to file another Step 1 grievance—had expired. The TDCJ guidance available online tells inmates to file a Step 2 grievance if they are "not satisfied with the Step 1 response" and that "Step 2 appeals shall be accompanied by the original, answered Step 1." TDCJ Offender Orientation Handbook at 73–74, [Texas Department of Criminal Justice, Offender Orientation Handbook](). In their own description of the TDCJ grievance process, Defendants simply state that "**[o]nce an inmate receives a response to his Step 1 grievance**, he then has fifteen days to file a Step 2 grievance to appeal an unfavorable result at the state level." (Dkt. #53 at 5 (emphasis added).)

The handbook also advises as follows about how to raise problems with the grievance procedures:

> Do not use a grievance form to comment on the effectiveness and credibility of the grievance procedure; instead, submit a letter or I-60 to the administrator of Offender Grievance Program.

TDCJ Offender Orientation Handbook at 75, Texas Department of Criminal Justice, Offender Orientation Handbook. Plaintiff arguably followed this guidance in asking about his missing grievance via his February I-60 request.

If more was required of Plaintiff in these circumstances, Defendants must make that clear to be entitled to summary judgment. *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016) (holding that an administrative remedies procedure is not available for the purposes of the PLRA when it is "a simple dead end," when it is too confusing for an ordinary prisoner to navigate it, or when administrators "thwart" inmates from using the process). The proof and arguments offered by Defendants would be sufficient to merit summary judgment in a case where Plaintiff simply abandoned a grievance process he knew was ongoing in order to file suit. But that is not what happened here, and Defendants have failed to offer any facts or legal argument going directly to the circumstances of this case.

It is possible that there are facts or law that would clearly establish that Plaintiff's actions between the expiration of TDCJ's time to respond to his Step 1 grievance and his filing his complaint were not sufficient to exhaust his administrative remedies. But Defendants have not cited them (having not acknowledged the untimeliness of TDCJ's Step 1 response or Plaintiff's efforts to pursue a response), and they bear the burden in this motion. *See Cantwell*, 788 F.3d at 509 ("The defendants had the burden to establish that there were available procedures that Cantwell did not exhaust, and the district court erred in not holding them to it."). It is not the Court's responsibility to make a defendant's case for him or simply to presume that there is support for his motion. *See O'Fallon v. Protocol Recovery Serv., Inc.*, No. 2:15-CV-28-KS-MTP, 2015 WL 6394568, at *2 (S.D. Miss. Oct. 21, 2015) (holding that when defendant raises a bar to a claim "it is his responsibility to provide a legal argument to support the claim—not the Court's"). When

a defendant fails to submit proof going to the determinative issue in an exhaustion dispute, summary judgment must be denied. *Stout v. N. Williams*, 476 F. App'x 763, 765 (5th Cir. 2012) (reversing grant of summary judgment where "LeBlanc has failed to carry her initial burden of proof as to her affirmative defense that Stout failed to exhaust his administrative remedies").

**V. Conclusion**

The records and arguments before the Court do not establish that Plaintiff failed to exhaust his administrative remedies under the unusual circumstances presented by this case. Thus, a review of summary judgment evidence in this case, viewed in the light most favorable to Plaintiff, makes summary judgment for Defendants on this point inappropriate.

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion for summary judgment (Dkt. #53) be **DENIED** without prejudice to Defendants' ability to file a renewed motion if they can submit additional facts or law that clearly establish the steps that were required for Plaintiff to exhaust in this case and his failure to take them.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 30th day of August, 2022.

14

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE